**2023-1413**

# United States Court of Appeals
# for the Federal Circuit

**MILITARY-VETERANS ADVOCACY,**
*Petitioner*,

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent*.

**Petition for Review Pursuant to 38 U.S.C. § 502**

## PETITIONER'S COMBINED PETITION FOR
## PANEL REHEARING AND REHEARING EN BANC

John B. Wells
**MILITARY-VETERANS ADVOCACY INC.**
P.O. Box 5235
Slidell, LA 70469-5235

Michael E. Joffre
William H. Milliken
Paige E. Cloud
**STERNE KESSLER GOLDSTEIN & FOX P.L.L.C.**
1101 K Street NW
Washington, DC 20005
(202) 371-2600

*Counsel for Petitioner*

Dated: April 21, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1413

**Short Case Caption** Military-Veterans Advocacy v. Secretary of Veterans Affairs

**Filing Party/Entity** Military-Veterans Advocacy

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/03/2023

Signature: /s/ William H. Milliken

Name: William H. Milliken

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Military-Veterans Advocacy | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

POINTS OF FACT OR LAW OVERLOOKED OR  MISAPPREHENDED BY
     THE COURT ..............................................................................................4

RULE 40(c) STATEMENT OF COUNSEL .........................................................5

ARGUMENT ........................................................................................................6

I.    The Background Check Provision exceeds the VA's statutory authority. .........6

II.   The Background Check Provision is not the product of reasoned decision-
     making. ...................................................................................................11

III.  Rehearing is warranted because the Background Check Provision has
     serious deleterious consequences: it acts as a bar preventing veteran
     representatives from accessing VBMS and Caseflow...................................14

CONCLUSION ...................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama Association of Realtors v. Department of Health & Human Services*,
141 S. Ct. 2485 (2021)........................................................................5, 6

*American Bar Association v. Federal Trade Commission*,
430 F.3d 457 (D.C. Cir. 2005)...............................................................8

*Atascadero State Hospital v. Scanlon*,
473 U.S. 234 (1985).............................................................................8

*Atkins v. Parker*,
472 U.S. 115 (1985)............................................................................16

*Cushman v. Shinseki*,
576 F.3d 1290 (Fed. Cir. 2009) ...........................................................16

*Greene v. McElroy*,
360 U.S. 474 (1959)............................................................................16

*Mathews v. Eldridge*,
424 U.S. 319 (1976)............................................................................16

*Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*,
463 U.S. 29 (1983)..............................................................................13

*National Federation of Independent Business v. Department of Labor*,
595 U.S. 109 (2022).........................................................................5, 6

*Natural Resources Defense Council v. U.S. E.P.A.*,
658 F.3d 200 (2nd Cir. 2011) ..........................................................11, 13

*TikTok Inc. v. Garland*,
145 S. Ct. 57 (2025)............................................................................16

*United States v. Bass*,
404 U.S. 336 (1971)............................................................................8

*West Virginia by & through Morrisey v. U.S. Department of the Treasury*,
59 F.4th 1124 (11th Cir. 2023) ...................................................................7

*Will v. Michigan Department of State Police*,
491 U.S. 58 (1989)..............................................................................6, 8

## Statutes and Other Authorities

38 U.S.C. § 501(a) ...................................................................................7

38 U.S.C. § 5722(b) ............................................................................4, 6

38 U.S.C. § 5722(b)(2)(A) ..................................................................4, 11

38 U.S.C. § 5722(b)(3).............................................................................7

38 U.S.C. § 5723(b) .................................................................................6

38 U.S.C. § 5723(b)(1)..............................................................................7

## Other Authorities

38 C.F.R. § 1.601(a)(2) ............................................................................1

38 C.F.R. § 1.602(c)(1) ............................................................................1

87 Fed. Reg. 37747 (June 24, 2022) ........................................................8

**INTRODUCTION**

This case involves challenges to two regulations promulgated by the U.S. Department of Veterans Affairs that frustrate veterans' ability to obtain and receive vital representation when seeking benefits from the VA. The regulations govern veteran representatives' access to their clients' claim files through two VA IT systems called Veterans Benefits Management System (VBMS) and Caseflow.

A unanimous panel of this Court invalidated the first challenged regulation, 38 C.F.R. § 1.602(c)(1) (the "Inspection Provision"), which permits the VA to, "at any time and without notice," "inspect the computer hardware and software used to obtain access to VA IT systems and their location." This Court held that the Inspection Provision was unlawful for three reasons: the VA lacked statutory authority to enact it; the VA failed to link the purported need for the provision to any risk assessment; and the VA failed to articulate a reasoned basis for concluding that "the breadth of the Inspection Provision is required to meet the goals of information security." Opinion ("Op.") 10–11.

That same reasoning should have led to invalidation of the second challenged regulation as well. That provision—38 C.F.R. § 1.601(a)(2) (the "Background Check Provision"), which subjects veteran representatives accessing VBMS and Caseflow to an ill-defined and standardless background check and permits the VA to revoke a representative's access based on the VA's arbitrary

1

decision that the representative is somehow unsuitable—likewise lacks any basis in any statutory text, finds no support in any risk assessment of record, and enjoys a scope extending far beyond what is reasonably required to meet the VA's goal of maintaining information security.

As for statutory authority: neither the panel nor the government has pointed to any provision of law that provides the requisite clear delegation of this authority from Congress to the VA. Tellingly, the government has relied exclusively on an Office of Management and Budget ("OMB") policy that is facially irrelevant because it applies only to federal employees and contractors. As for the risk assessment: while the VA has pointed to certain risk assessments conducted for VBMS and Caseflow, there is no evidence that any of these risk assessments was linked to the regulation. As the panel aptly noted with respect to the Inspection Provision, such a link is required. And, as for scope: while the VA might be able to articulate a reasoned basis for conducting background checks on non-attorneys "such as paralegals and administrative support staff," Op. 8, it has supplied no reason why the same burdens should be imposed on officers of the Court already admitted to practice before the VA and in good standing with a state bar.

The VA's arrogation of authority has serious consequences. The Background Check Provision limits the ability for veterans to engage the services of adequate representatives, and it hinders those representatives from effectively

2

representing their clients. Such an outcome is entirely adverse to the purpose of the statutes that VA claims to rely on: to make it easier for veterans to obtain and receive effective representation. Worse, MVA's attorneys have been unable even to acquire the forms required to begin the background-check process, despite having tried to obtain them from the VA for weeks. It appears that veteran representatives cannot comply with the Background Check Provision even if they want to. The provision thus acts as a de facto bar between veteran representatives and access to the information they need to competently represent their clients.

Rehearing should be granted, and the Background Check Provision should be declared unlawful and set aside.

**POINTS OF FACT OR LAW OVERLOOKED OR
MISAPPREHENDED BY THE COURT**

1.      The panel erroneously determined that the Background Check Provision was proper because the provision covered non-attorneys. Op. 8. However, whether the provision covers both attorneys and non-attorneys is irrelevant. The critical issue is whether the Background Check Provision is based on adequate statutory authority permitting the VA to impose such a requirement. It is not. The only statutory authority the government has invoked applies to federal employees and contractors, not veteran representatives.

2.      The panel's analysis also disregarded the requirement that the Background Check Provision must be *based on* a risk assessment. *See, e.g.*, Op. 10; *see also* 38 U.S.C. § 5722(b)(2)(A), (B). While the government produced a series of risk assessments, there is no evidence showing that the Background Check Provision is tied to any of those risk assessments. Rather, the risks the government points to are designated "low" as to severity, likelihood, and residual risk level. *See* SAppx46–47. There is no explanation why the ambiguous Background Check Provision is needed to alleviate these low-level risks. The government likewise has not explained why the provision should apply not only to non-attorney staff such as paralegals and administrative assistants but also to attorneys already in good standing with a state bar.

4

**RULE 40(c) STATEMENT OF COUNSEL**

Based on my professional judgment, I believe the panel's decision is contrary to the following decisions of the Supreme Court of the United States: *Nat'l Fed'n of Indep. Bus. v. Dep't of Labor*, 595 U.S. 109 (2022) ("*NFIB*"); and *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758 (2021).

Based on my professional judgment, I believe this appeal requires answers to the following precedent-setting questions of exceptional importance:

1.      Whether the provisions of Title 38 generally permitting the VA to establish an information-security program and standards for access to VA IT systems authorize the VA to subject veteran representatives who access those systems to a standardless background check.

2.      Whether the VA's decision to subject veteran representatives who access VA IT systems is based on reasoned decision-making.

/s/ *William H. Milliken*
William H. Milliken
*Counsel for Petitioner*
*Military-Veterans Advocacy*

## ARGUMENT

### I.   The Background Check Provision exceeds the VA's statutory authority.

The Background Check Provision lacks any statutory basis. The statutes that the panel invoked to justify the provision, 38 U.S.C. §§ 5722(b) and 5723(b), merely allow the VA to regulate VA "information and information systems" by implementing "training[] and inspection requirements." But both the major-questions doctrine and the federalism canon require a clear statement from Congress granting the VA the sort of power that it has claimed here. The panel did not and could not identify any such clear statement. A regulation permitting the VA to conduct a roving probe into an attorney's personal and professional life "simply because" the attorney happens to access VA systems "significantly expand[s]" the VA's authority without any indication from Congress, in violation of both doctrines. *See NFIB*, 595 U.S. at 118; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989).

A.   As the panel acknowledged, *see* Op. 10 (citing *Ala. Ass'n*, 594 U.S. at 764), the major-questions doctrine prohibits agencies from "significantly expand[ing] [their] regulatory authority without clear congressional authorization." *See NFIB*, 595 U.S. at 118. But that is precisely what the VA has done here. There is no statute that specifically grants the VA the authority to require veteran representatives to undergo a standardless and undefined background check. While

38 U.S.C. § 501(a) states that the VA "has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department," Op. 7, such language does not grant the VA "a breathtaking amount of authority." *Ala. Ass'n*, 594 U.S. at 764. Other Circuits agree. The Eleventh Circuit held that the exact same "necessary or appropriate" language was *not* the clear statement that the major-questions doctrine requires. *W. Va. by & through Morrisey v. U.S. Dep't of the Treasury*, 59 F.4th 1124, 1146–47 (11th Cir. 2023).

To be clear, it is not MVA's position that the VA has *no* authority to regulate its own IT systems. Rather, MVA's point is that the VA does not have *unlimited* power to regulate its IT systems. For example, Sections 5722 and 5723 permit the VA to establish "security controls[] … to protect the confidentiality, integrity, and availability" of Department systems and information, such as "training[] and inspection requirements." 38 U.S.C. §§ 5722(b)(3), 5723(b)(1). But that general language is insufficient to grant the VA the sort of authority it has claimed here. Congress provided no clear statement indicating an intent to give the VA the power to conduct an expansive and unlimited investigation of any individual who wants to access its IT systems. Such a remarkable power would surely be granted with more limitations, or else it may be abused.

7

B.    In addition to the major-questions doctrine, the federalism canon (which the panel did not address) requires that there be "unmistakably clear" language in a federal statute before interpreting it to shift the constitutional balance between the Federal Government and the States. *Will*, 491 U.S. at 65 (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)); *see United States v. Bass*, 404 U.S. 336, 349 (1971). The Background Check Provision—because it applies to attorney as well as non-attorney representatives—effectively regulates the legal profession, an area of sovereignty "traditionally the province of the states." *Am. Bar Ass'n v. FTC*, 430 F.3d 457, 471 (D.C. Cir. 2005). The VA unceremoniously encroaches on this province by requiring lawyers who wish to represent veterans in the benefits adjudication process to submit to an amorphous "background suitability investigation." In essence, the VA purports to act as a bar-admission committee and make decisions regarding who can practice veterans' law. That is the prerogative of the states, and the relevant statutes do not contain any clear statement that Congress intended the VA to intrude upon that traditional state function.

The Background Check Provision is particularly problematic because it provides no guidance on what the investigation entails. The regulation provides that attorneys will be subject to something "at least equivalent" to a National Agency Check with Written Inquiries (NACI). 87 Fed. Reg. 37747 (June 24,

8

2022). But what exactly is "at least equivalent" to an NACI is unclear. The result is a scheme where veteran representatives who are not willing to submit to the VA's standardless background check can represent other clients, just not veterans in the benefits adjudication process. The relevant statutes do not imbue the VA with the authority to establish such a regime.

C.    In reaching its conclusion, the panel cited a number of statutes. Op. 6–7. But, as explained above, not one of these statutes provides the requisite clear statement from Congress required for the VA to promulgate such a broad regulation. And, tellingly, the *government itself* did not rely on these statutes in its briefing. Instead, the government pointed to regulatory documents that, according to the government, make a background check "mandatory"—Homeland Security Presidential Directive 12 ("HSPD-12") and an accompanying OMB memorandum. *See* Dkt. 39 ("RBr.") 9–11 (citing Appx41–45); RBr. 10 (agencies are statutorily required to "comply with 'policies and procedures issued by the [OMB] Director'") (quoting 44 U.S.C. § 3554(a)(1)(B)); RBr. 11 (citing 38 U.S.C. § 5722(c)); RBr. 27–28. The panel did not rely on this argument, however—and for good reason. It is flatly incorrect.

HSPD-12 is titled "Policy for a Common Identification Standard for Federal Employees and Contractors." Appx41 (emphasis added). As the title indicates, this policy applies only to *federal employees and contractors*. Indeed, the OMB

9

memorandum the government cites makes clear that the background-check requirement applies only to federal "employees and contractors who require longterm [*sic*] access to Federally controlled facilities and/or information systems." Appx44.

The government also argued that "the term 'employees' includes 'agency specific categories of individuals (e.g., short term … guest researchers; volunteers; or intermittent, temporary or seasonal employees),' who are not Federal employees or contractors, but seek access to agency systems—like the accredited individuals at issue here." RBr. 10–11. This argument mischaracterizes the record. As an initial matter, it is dubious that veterans' attorneys accessing VBMS would qualify as "guest researchers," "volunteers," or "temporary employees." But, more to the point, the memorandum states that the applicability of the background-check requirement to these categories of individuals "is an agency risk-based decision." Appx44. There is *nothing* in the record to suggest that veteran representatives seeking access to veteran records are required to go through a background check.

In short, HSPD-12 and the OMB memorandum do not apply to veterans' attorneys who access the VBMS in the course of representing their clients. The panel never found otherwise, and none of the statutes the panel did cite supply the requisite clear statement granting the VA this authority. Accordingly, the

10

Background Check Provision exceeds the VA's statutory authority. Rehearing should be granted, and the provision should be set aside.

## II.    The Background Check Provision is not the product of reasoned decision-making.

In addition to lacking statutory authority, the Background Check Provision fails because it is not adequately tied to a risk assessment. Congress specifically requires the VA to implement "policies and procedures that . . . are based on risk assessment." 38 U.S.C. § 5722(b)(2)(A). The VA's own internal guidance acknowledges this, stating that "[r]isk assessments must be performed" in the context of cybersecurity, citing the framework developed by the National Institute of Standards and Technology that the agency is instructed to use for conducting these assessments. Appx1754. But the inquiry does not stop there, because the agency must then show that there is a "rational connection between the facts found and the choice made." *See Nat. Res. Def. Council v. U.S. E.P.A.*, 658 F.3d 200, 215 (2nd Cir. 2011) ("*NRDC*"). The VA did not do so here.

The government promulgated the Background Check Provision without any reference to a risk assessment. It was only after MVA filed its petition for review that the government (belatedly) produced an alleged risk assessment for the provision. However, it appears that the risk assessment was related to the access of VA systems by employees and contractors, not veteran representatives. *See, e.g.*,

11

SAppx47 (citing a "Common Access Credential" used by federal employees).
Thus, it is unclear how the risk assessment is relevant to the analysis at all.

In other words, merely performing some kind of risk assessment is not enough. Not only must a risk assessment have been conducted; the VA must draw some connection between its policies and that risk assessment. The panel acknowledged this very point in its analysis of the Inspection Provision. *See* Op. 10 (finding the Inspection Provision invalid because "the VA's citations to the risk assessment do not link any risk to confidentiality to computer hardware and software utilized to obtain access to VA IT systems or their location"). But the requisite connection is lacking here—just as it was with respect to the Inspection Provision. Indeed, the specific risks that the government points to are designated "low" in severity, SAppx46–47, and there has been no explanation why an unlimited background check of veteran representatives is necessary for them to access their client's records.

The panel's defense of the Background Check Provision relies heavily on the fact that the provision applies to non-attorneys and attorneys alike. Op. 8. "Even if MVA were correct that the attorneys who access the systems already have sufficient background checks," the panel reasoned, "the additional support staff newly authorized to access these databases would not have had similar background checks." *Id*. That reasoning fails.

12

As an initial matter, the provision's application to non-attorneys does not change Congress' requirement that there *must* be a risk assessment and the regulation *must* be tied to the findings of that risk assessment. *See NRDC*, 658 F.3d at 215. Here it was not, as explained above.

Moreover, the VA's decision to lump attorneys and non-attorneys together and require background checks of both does not solve the problem—it *is* the problem. The VA has provided *no* justification for why it treats the two different categories of individuals the same. As part of the VA's reasoned decision-marking, the VA needed to consider both the marginal benefit of including attorneys in the scope of the provision and the potential costs of hindering attorney access to the system and preventing veterans from obtaining adequate representation. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). But the VA did not do that. Rather, the VA arbitrarily promulgated a regulation that requires a background check *regardless* of any previous licensures or state supervision, citing only the irrelevant OMB guidance. *See* Appx4. That is not reasoned decision-making.

The panel also states that "those who do not seek optional system access under the amended regulations may continue to receive records from VA as provided under the other provisions in 38 C.F.R. part 1." Op. 8. This ignores the reality that these other methods are woefully inadequate substitutes for VBMS and

13

Caseflow access. In fact, veterans may not work with individuals who cannot access VBMS or Caseflow. *See* Dkt 44, Add5, ¶ 13. Moreover, the lack of real-time access to new evidence is detrimental to a representative's ability to develop legal arguments. *See* Addendum, Add15, ¶ 10. The delay in receiving the information means postponing hearings or other similar delays. *See* Dkt 44, Add8, ¶ 5. And every postponement just means more time when a veteran is not receiving their benefits.

In other words, these "other methods" are no solution. In order for veterans to obtain the representation they need, their representatives must have access to VBMS and Caseflow. Yet the Background Check Provision prevents just that. Accordingly, because the Background Check Provision is not based on reasoned decision-making, it should be set aside.

### III. Rehearing is warranted because the Background Check Provision has serious deleterious consequences: it acts as a bar preventing veteran representatives from accessing VBMS and Caseflow.

The validity of the Background Check Provision is not merely an abstract legal issue. This provision has tangible, real-world consequences for those our country owes most and those that help them obtain the benefits to which they are entitled.

Access to VBMS is vital for effective representation in the benefits-adjudication process because it enables representatives to keep up to date with a

client's recent decisions, exams, and correspondence with VA in real-time. Likewise, Caseflow allows a veteran representative to track cases, appeals, and dockets. Caseflow and VBMS are thus "essential" for veteran representatives. *See* Dkt 44, Add3, ¶ 5. In comparison, hard copy documents are inadequate substitutes for Caseflow and VBMS because they are hard to obtain, come late, or fail to arrive at all. *See* Addendum, Add14, ¶¶ 6–7; Addendum, Add20, ¶ 5. Moreover, veteran representatives are faced with outdated and incompatible technology when attempting to use government-provided hardcopies. *See* Addendum, Add14, ¶ 7; Addendum, Add20, ¶ 5. For example, the CD-ROMS sent by the VA are not compatible with Windows 11 or macOS. *See* Addendum, Add14, ¶ 7; Addendum, Add20, ¶ 5. Accordingly, the VA's purported alternatives to VBMS and Caseflow access are illusory. An alternative that cannot be accessed or implemented is no real alternative at all.

Even worse, the VA has in practice made VBMS and Caseflow access impossible even for attorneys who are *willing* to subject themselves to a background check. MVA's attorneys have been attempting to merely obtain the forms necessary to begin the background check since the panel's decision issued at the beginning of March (six weeks ago) but have yet to receive them. *See* Addendum, Add15, ¶¶ 8–9; Addendum, Add21, ¶¶ 7–8. That does not even account for the time needed to process the background checks. This extensive

15

delay is detrimental when representatives are on a time crunch to timely submit documents for their clients. *See, e.g.*, Addendum, Add15, ¶ 10. In other words, not only is the Background Check Provision unlawful; the provision operates to deny systems access even to representatives who are willing to comply with it despite its illegitimacy.

The stakes here are significant. Disability benefits constitute a protected property interest and cannot be terminated without due process of law. *See Atkins v. Parker*, 472 U.S. 115, 128 (1985); *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). This due process protection extends to veterans' benefits. *See Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009). And it is firmly established that, as a matter of due process, claimants must be given access to any documents relied upon by the government in making benefit eligibility determinations. *See Greene v. McElroy*, 360 U.S. 474, 496 (1959) ("[W]here governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue."); *see also TikTok Inc. v. Garland*, 145 S. Ct. 57, 74 (2025) (Gorsuch, J., concurring) ("Efforts to inject secret evidence into judicial proceedings present obvious constitutional concerns.").

Fundamentally, a representative must have access to the full record reviewed by the Regional Office. One cannot respond to documents that have not been disclosed. And, while remand responses are expected within days, obtaining the necessary records without VBMS and Caseflow may take months. Yet the VA has placed an unlawful condition on access to those systems and, even worse, is implementing that condition in a way that effectively bars access even to representatives who are willing to subject themselves to it. Rehearing is warranted to correct this injustice.

## CONCLUSION

The petition should be granted.

|  | /s/ *William H. Milliken* |
|---|---|
| John B. Wells | Michael E. Joffre |
| **MILITARY-VETERANS ADVOCACY INC.** | William H. Milliken |
| P.O. Box 5235 | Paige E. Cloud |
| Slidell, LA 70469-5235 | **STERNE KESSLER GOLDSTEIN & FOX P.L.L.C.** |
|  | 1101 K Street NW |
|  | Washington, DC 20005 |
|  | (202) 371-2600 |
|  | *Counsel for Petitioner* |

Dated: April 21, 2025

17

# ADDENDUM

# United States Court of Appeals
# for the Federal Circuit

---

**MILITARY-VETERANS ADVOCACY,**
*Petitioner*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent*

---

2023-1413

---

Petition for review pursuant to 38 U.S.C. Section 502.

---

Decided: March 6, 2025

---

WILLIAM MILLIKEN, Sterne Kessler Goldstein & Fox PLLC, Washington, DC, argued for petitioner. Also represented by PAIGE CLOUD, MICHAEL E. JOFFRE; JOHN B. WELLS, Law Office of John B. Wells, Slidell, LA.

ERIC LAUFGRABEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., PATRICIA M. MCCARTHY; CHRISTA A. SHRIBER, JONATHAN ELLIOTT TAYLOR, NICHOLAS XANTHAKOS, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before MOORE, *Chief Judge*, STOLL, *Circuit Judge*, and GILSTRAP, *Chief District Judge*.[1]

MOORE, *Chief Judge*.

Military-Veterans Advocacy (MVA) filed a petition for review pursuant to 38 U.S.C. § 502, challenging *Individuals Using the Department of Veterans Affairs' Information Technology Systems to Access Records Relevant to a Benefit Claim*, 87 Fed. Reg. 121, 37744 (June 24, 2022) (Final Rule). Specifically, MVA challenges the validity of 38 C.F.R. § 1.601(a)(2), which requires users of Veterans Affairs' (VA) Information Technology (IT) systems to potentially pass "a background suitability investigation" (the Background Check Provision), and 38 C.F.R. § 1.602(c)(1), which permits the VA to, "at any time without notice," "inspect the computer hardware and software utilized to obtain access to VA IT systems and their location" (the Inspection Provision). Because we hold the VA has authority to promulgate the Background Check Provision, but not the Inspection Provision, we grant-in-part and deny-in-part the petition and set aside 38 C.F.R. § 1.602(c)(1) of the Final Rule.

## BACKGROUND

Title 38 of the United States Code establishes benefits for veterans who suffer from service-connected disabilities. In pursuit of these benefits, veterans may be represented by attorneys, agents, or a VA-recognized organization. 38 U.S.C. § 5904. To represent a veteran, an attorney or agent is provided access to the veteran's claim file. 38 U.S.C. § 5701(b)(1); 38 C.F.R. § 1.577(a). Claim files often include sensitive and confidential information, such as

---

[1]    Honorable Rodney Gilstrap, Chief Judge, United States District Court for the Eastern District of Texas, sitting by designation.

the veteran's financial and medical records. Government
Br. 5. Claim files can be accessed in three ways: (1) review-
ing a paper copy at the VA, (2) requesting an electronic ver-
sion on a compact disc or thumb drive, or (3) online through
two internal VA electronic systems—Veterans Benefits
Management System (VBMS) and Caseflow. Since 1994,
the VA has permitted accredited individuals to apply for
and obtain remote, read-only access to claim files on VBMS
and Caseflow.

The VA issued a Notice of Proposed Rulemaking to
amend regulations 38 C.F.R. §§ 1.600, 1.601, 1.602, and
1.603, which address user requirements for accessing the
VA IT systems. 85 Fed. Reg. 33, 9435 (Feb. 19, 2020). Rel-
evant to MVA's petition are 38 C.F.R. §§ 1.601(a)(2) and
1.602(c)(1). The proposed rule added the following lan-
guage to 38 C.F.R. § 1.601(a)(2):

> To qualify for access to VBA IT systems, the
> applicant must comply with all security re-
> quirements deemed necessary by VA to en-
> sure the integrity and confidentiality of the
> data and VBA IT systems, which may include
> passing a background suitability investiga-
> tion for issuance of a personal identity verifi-
> cation badge.

85 Fed. Reg. at 9440. For 38 C.F.R. § 1.602(c)(1), the pro-
posed rule maintained the prior language:

> (c) VBA may, at any time without notice:
>
> (1) inspect the computer hardware and soft-
> ware utilized to obtain access and their loca-
> tion[.]

85 Fed. Reg. at 9441.

MVA submitted comments in response to the proposed
rulemaking. J.A. 1174–83. MVA argued the regulations
violated the pro-veteran canon of construction and due

process, and are arbitrary and capricious by placing burdens on attorneys and violating attorney-client privilege. *Id.*

The VA issued the relevant rules as proposed, with the exception of changing "VBA" to "VA," and addressed some of MVA's comments in its Final Rule. 87 Fed. Reg. at 37749–50. For the Background Check Provision, the VA explained attorneys who are in good standing with the bar cannot be excluded from the requirement because the provision is required to implement personal identity verification badges. 87 Fed. Reg. at 37747. For the Inspection Provision, the VA noted the requirement had been in place since 1994 and applies to everyone who wants access to VA IT systems, and there is no law requiring the VA to provide access to the IT systems and no expectation of privacy when accessing the systems. *Id.* The Final Rule issued on June 24, 2022. 87 Fed. Reg. at 37744.

MVA filed a petition for review of the Final Rule, specifically the Background Check and Inspection Provisions. We have jurisdiction pursuant to 38 U.S.C. § 502.

DISCUSSION

I.  Standing

Before reaching the merits of MVA's petition, we first determine whether MVA has Article III standing. "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). For a petitioner to have standing, it must show (1) an "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) a likelihood that "the injury will be 'redressed by a favorable decision.'" *Id.* at 560–61 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38, 43 (1976)). To show standing as an organization, MVA must demonstrate the same requirements. *Military-Veterans*

*Advoc. v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1129 (Fed. Cir. 2021).

MVA argues it has organizational standing. Pet. 1–3; Reply Br. 5–6. The Government disagrees, arguing MVA cannot show injury-in-fact. Government Br. 20–21. We hold MVA has organizational standing to challenge the Final Rule because MVA demonstrated injury-in-fact.[2]

Injury-in-fact is established by a "concrete and demonstrable injury to the organization's activities." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). MVA litigates, legislates, and educates on behalf of members of the military and military veterans. Pet. 1–2. In its representation of veterans, MVA uses, or would use if not for the Final Rule, VA IT systems governed by the Final Rule. Add. 4–6; Add. 8–11 (declarations of MVA members).[3] MVA argues the Final Rule frustrates its goal of representing veterans by, for example, requiring its attorneys to use paper copies of client files rather than VBMS and Caseflow and causing its attorneys to lose veteran clients due to lack of VBMS and Caseflow access for failure to comply with the Background Check and Inspection Provisions of the Final Rule. Reply Br. 6; *see also* Add. 2–11. This is more "than simply a setback to the organization's abstract social interests," but a concrete injury-in-fact. *Havens*, 455 U.S. at 379. Because MVA has organizational standing to

---

[2]    Because we hold MVA has organizational standing, we need not address whether MVA has associational standing.

[3]    MVA moved to file an addendum containing two declarations from its members with the Reply Brief. E.C.F. No. 35. Because the Government did not oppose, *id.* at 2, we granted the motion, E.C.F. 40, and now consider these materials.

challenge 38 C.F.R. §§ 1.601(a)(2) and 1.602(c)(1), we address the merits of MVA's petition.

## II.     The Final Rule

We have jurisdiction to review the validity of both the rulemaking process and the challenged rules of the VA. *McKinney v. McDonald*, 796 F.3d 1377, 1383 (Fed. Cir. 2015); 38 U.S.C. § 502. We review the agency's action pursuant to 5 U.S.C. § 706(2) to determine whether the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Serv. Women's Action Network v. Sec'y of Veterans Affs.*, 815 F.3d 1369, 1374 (Fed. Cir. 2016). In our review, we "look to see whether the agency employed reasoned decisionmaking." *Id.* A challenge to the constitutionality of a regulation is a question of law we review without deference to the agency. *Preminger v. Sec'y of Veterans Affs.*, 517 F.3d 1299, 1311–12 (Fed. Cir. 2008).

## A. The Background Check Provision

The Background Check Provision of the Final Rule provides:

> To qualify for access to VA IT systems, the applicant must comply with all security requirements deemed necessary by VA to ensure the integrity and confidentiality of the data and VA IT systems, which may include *passing a background suitability investigation* for issuance of a personal identity verification badge.

38 C.F.R. § 1.601(a)(2) (emphasis added). MVA argues the provision exceeds the VA's statutory authority and is not the product of reasoned decision making. MVA Opening Br. 53–61. We do not agree.

The Background Check Provision is within the VA's statutory authority to promulgate regulations regarding information security. The VA cited 38 U.S.C.

§§ 501, 5721–28 as authority for promulgating 38 C.F.R. §§ 1.600–1.603, which includes the Background Check Provision. 87 Fed. Reg. at 37749. Under 38 U.S.C. § 501, the VA, through the Secretary, "has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department." The VA is charged with prescribing rules to "establish and maintain a comprehensive Department-wide information security program to provide for the development and maintenance of cost-effective security controls needed to protect Department information, in any media or format, and Department information systems." 38 U.S.C. § 5722(a). The VA, through the Assistant Secretary for Information and Technology, is also responsible for "[e]stablishing, maintaining, and monitoring Department-wide information security policies, procedures, control techniques, training, and inspection requirements as elements of the department information security program," 38 U.S.C. § 5723(b)(1), and "[e]stablishing standards for access to Department information systems by organizations and individual employees, and to deny access as appropriate," 38 U.S.C. § 5723(b)(6). These statutory provisions give the VA the authority to implement security requirements for access to VA IT systems.

The VA's ability to promulgate regulations for IT security is tempered by the very same statute which provides the authority. The Secretary "shall ensure that the Department information security program . . . [p]olicies and procedures [] are based on risk assessments." 38 U.S.C. § 5722(b)(2)(a). The VA conducted and considered risk assessments for VBMS and Caseflow. Government Br. 31; *see, e.g.*, S. Appx. 1 (risk assessment for VBMS Cloud Assessing); *id.* at 46 (risks of remote access from separate devices); *id.* at 48 (vulnerability summary relating to personal identity verification cards). The background check "for issuance of a personal identity verification

badge," 38 C.F.R. § 1.601(a)(2), is based on a risk assessment as required by the statute, 38 U.S.C. § 5722(b)(2)(a).

MVA argues even if the VA has the authority to promulgate the regulation, it is not reasonable because the VA failed to consider its impact on veterans' access to attorneys. MVA Opening Br. 60. MVA argues that attorneys already have background checks pursuant to their bar license and that this additional background check is an unreasonable exercise of VA authority. The Background Check Provision, however, is not directed only to attorneys. Rather than limiting access to VBMS and Caseflow to attorneys, the Final Rule expands access to staff members such as paralegals and administrative support staff. 87 Fed. Reg. at 37745 ("VA further amends those regulations beyond the proposed rule to allow similar access to some staff members who are affiliated with recognized VSOs and VA-accredited attorneys or claims agents."). Even if MVA were correct that the attorneys who access the systems already have sufficient background checks, MVA fails to address the government's argument that the additional support staff newly authorized to access these databases would not have had similar background checks. The VA explained the Background Check Provision applies equally to everyone who applies for remote access to VBMS and Caseflow. Government Br. 25. The VA also considered that "those who do not seek optional system access under the amended regulations may continue to receive records from VA as provided under the other provisions in 38 CFR part 1." 87 Fed. Reg. at 37745. The Background Check Provision is therefore grounded in the risk assessment and tethered to the VA's authority in protecting information security and it is the product of reasoned decision making.

### B. The Inspection Provision

The Inspection Provision of the Final Rule provides:

> VA may, at any time without notice . . . in-
> spect the computer hardware and software
> utilized to obtain access and their location.

38 C.F.R. § 1.602(c)(1). MVA argues the provision: (1) is unconstitutional under the Fourth Amendment, (2) exceeds the VA's statutory authority, and (3) is not the product of reasoned decision-making. MVA Opening Br. 20–53. We address each argument in turn.

MVA argues that this inspection provision is an unreasonable search which violates the Fourth Amendment. We may consider only facial challenges, rather than as applied challenges, to regulations. *Preminger*, 517 F.3d at 1308 n.5. With a facial challenge, if any application of the regulation would not violate the Fourth Amendment, we may not set the regulation aside. Here, there are applications of the Inspection Provision that do not violate the Fourth Amendment. For example, MVA agreed at oral argument that the Inspection Provision allows the VA to ensure that a user is accessing the systems from an approved location, and such an inspection would be reasonable.[4] And users expressly agree to the VA Rules of Behavior, which state users do not have any expectation of privacy, will comply with security measures, and agree to inspections to gain access to VA IT systems. J.A. 1948–49. Consent is an exception to the Fourth Amendment's prohibition on unreasonable search and seizures. *See, e.g., Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Because there are some circumstances where the Inspection Provision does not violate the Fourth Amendment, it is not facially unconstitutional. *See, e.g., United States v. Salerno*, 481 U.S. 739, 745 (1987) ("the challenger must establish that no set

---

[4]    *See* Oral Argument at 6:16–58, *available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl= 23-1413_01072025.mp3.

10                          MILITARY-VETERANS ADVOCACY v.
                            SECRETARY OF VETERANS AFFAIRS

of circumstances exists under which the [regulation] would be valid").

MVA argues the Inspection Provision exceeds the VA's statutory authority. We agree. The provision gives the VA the authority to inspect not only the computer hardware and software used to access the VA IT systems, but also the location where the hardware and software are used. As the regulation is written, this could include the user's home office, entire house, client files, or sensitive personal documents, to name a few examples. The Government agrees that anywhere a user accesses the VA IT systems could be searched, including a user's bedroom in their home. *See* Oral Argument at 35:32–50, 38:03–35. This scope is particularly untethered to the statutory authority because the VA is generally an adverse party to the user of the VA IT system. This is a "markedly different" power than Congress likely envisioned in granting the VA the authority to promulgate information security policies. *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 764 (2021). VA argues the provision is limited in scope and would not include "rummaging through attorneys' drawers and cabinets." Government Br. 61. But the language of the Inspection Provision is not so limited. Whether the VA chooses to utilize the full scope of the Inspection Provision does not bear on our analysis.

The Inspection Provision also exceeds the VA's statutory authority because it is not based on a risk assessment as required by VA regulations implementing information security policies and procedures. 38 U.S.C. § 5722(b)(2)(a). The VA argues the Inspection Provision is based on the VBMS and Caseflow risk assessments. Government Br. 54–55. But the VA's citations to the risk assessment do not link any risk to confidentiality to computer hardware and software utilized to obtain access to VA IT systems or their location. S. Appx 2; S. Appx 157.

Even if the VA could demonstrate the Inspection Provision is properly grounded in a risk assessment, given the breadth of the provision, it is not the product of reasoned decision making. The VA argues the Inspection Provision is reasonable because it addresses the risk of disclosing sensitive personal information with remote access to VA systems. Government Br. 52; 87 Fed. Reg. at 37747. That may be a reasonable goal, but this record does not demonstrate the VA has a rational basis to promulgate a regulation as broad as the Inspection Provision to effectuate that goal. The VA has not demonstrated that the breadth of the Inspection Provision is required to meet the goals of information security.

CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the forgoing reasons, we grant-in-part and deny-in-part MVA's petition.

**GRANTED-IN-PART AND DENIED-IN-PART**

COSTS

Costs to MVA.

**2023-1413**

# United States Court of Appeals
# for the Federal Circuit

**MILITARY VETERANS ADVOCACY,**

*Petitioner*,

**v.**

**SECRETARY OF VETERANS AFFAIRS,**

*Respondent.*

**Petition for Review Pursuant to 38 U.S.C. § 502**

**DECLARATION OF BRIAN LEWIS
IN SUPPORT OF PETITIONER'S PETITION FOR
REHEARING/REHEARING *EN BANC***

I, Brian K. Lewis, hereby declare:

1.      I am attorney licensed to practice law in Minnesota. I make this declaration based on personal knowledge.

2.      I make this declaration in support of Petitioner's Motion for Rehearing or Rehearing *en banc* in the above-captioned case.

3.      I am a member of Military-Veterans Advocacy, Inc. ("MVA"). I have been a member of MVA since 2021. I was a member of MVA at the time MVA filed its petition for review in this case on January 20, 2023. I remain a paid-up member in good standing as of the date this declaration is signed.

4.    I currently serve MVA as Chairman of the Board of Directors. I am also dual hatted as MVA's Director of Litigation, a position I have held since 2022.

5.    MVA is dedicated to assisting veterans, including supporting them in navigating legal channels to secure the benefits they have rightfully earned through the VA. Through my work with MVA, I represent veterans in pursuing such benefits

6.    Access to the Veterans Benefits Management System (VBMS) and Caseflow is critical to effectively representing veterans. These systems provide real-time, accurate access to clients' files. Upon information and belief, the official record of a veteran's claims file is maintained in VBMS. Hard copy records or files on physical media (e.g., CD-ROMs) are inadequate substitutes, as they often arrive late, become outdated, or fail to arrive at all. I have experienced delays of weeks, months, and, in some cases, never received the requested materials.

7.    I exclusively use Apple computers in my practice as an accommodation for my service-connected disabilities. The CD-ROMs provided by the VA are incompatible with macOS Sequoia, which my computers use. Consequently, these discs are effectively useless.

8. After receiving this Court's opinion dated March 6, 2025 (Doc. 68), I contacted the St. Paul VA Regional Office to request the necessary forms to request access to VBMS and Caseflow.

9. Despite several telephone calls and emails, I have not received the necessary forms from the St. Paul VA Regional Office.

10. As a licensed attorney representing veterans, I must have timely access to my clients' official case records. My lack of access to VBMS and Caseflow significantly impairs my ability to advocate effectively. Often, I have only 30 days to respond to new evidence or decisions issued by the Regional Office. Without access to the newly developed evidence, it is impossible to provide meaningful feedback or legal argument. This raises serious due process concerns. *See* Greene v. McElroy, 360 U.S. 474 (1959).

11. Based upon my education, training, and experience, I do not believe the VA will provide the requested and required forms to obtain VBMS access because:

   a. I believe the VA is discriminating against MVA due to our occasionally contentious adversarial relationship.

   b. I further believe the VA is engaging in retaliation against me personally for:

      i. effectively representing veterans despite their roadblocks

     ii. for my repeated public statements regarding the VA's favoring of unlicensed laypersons over attorneys to represent veterans before the VA to the Minnesota Legislature and to Congress.

12. Pursuant to 38 C.F.R. §1.602(a)(2), the VA may conduct an unrestricted background check on me merely for representing a veteran. As MVA argued, this regulation subjects me to an arbitrary, capricious, and intrusive examination of my personal and professional life. I have already undergone multiple background checks, including:

- For admission to legal practice;
- For a Top Secret/Sensitive Compartmented Information security clearance during my military service;
- Most recently, by the United States Army in 2021 for access to a restricted and sensitive facility while representing a client.

I passed all these screenings.

13. I continue to aver that the VA's background check process is unnecessary.

     a. The same records are available in hard copy or on CD-ROM — assuming the VA delivers them promptly and uncorrupted. The current electronic system offers no greater security.

b. VA has an affirmative duty to implement appropriate cybersecurity best practices over the information systems in its control under the Federal Information Security Modernization Act. *See* 44 U.S.C. §3506.

c. The VA's data security responsibilities are more than satisfied through the attorney licensing practices, including the character and fitness assessments and determinations, of the several states and territories. *See generally* In re Office of Personnel Management Data Security Breach Litigation, 928 F.3d 42 (D.C. Cir. 2019). The VA already accepts attorney licensing as satisfying the character and fitness requirements to be accredited to practice before the Agency. See 38 C.F.R. §14.629(b)(1)(ii).

d. True protection lies in the attorney's license jurisdiction's Rules of Professional Responsibility, which holds attorneys accountable for any misuse of sensitive information. Additional protection lies in the VA General Counsel's ability to terminate accreditation for a variety of reasons. *See* 38 C.F.R. §14.633.

14.     If MVA's challenge to 38 C.F.R. §1.602(c)(1) succeeds in this case, I will directly benefit from the challenge because I will not be subject to an unfettered and indefinite background check.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. §1746.

Dated: <u>April 16, 2025</u>                    <u>*/s / Brian K. Lewis*</u>

                                                      Brian K. Lewis

**2023-1413**

# United States Court of Appeals
# for the Federal Circuit

**MILITARY VETERANS ADVOCACY,**

*Petitioner*,

**v.**

**SECRETARY OF VETERANS AFFAIRS,**

*Respondent.*

**Petition for Review Pursuant to 38 U.S.C. § 502**

### DECLARATION OF JOHN B. WELLS
### IN SUPPORT OF PETITIONER'S PETITION FOR
### REHEARING/REHEARING *EN BANC*

I, John B. Wells, hereby declare:

1.     I am an attorney licensed to practice law in Louisiana, Pennsylvania, and the District of Columbia. I am also accredited to practice before the Department of Veterans Affairs and the Court of Appeals for Veterans Claims. This declaration is based on my personal knowledge.

2.     I submit this declaration in support of Petitioner's Petition for Rehearing or Rehearing *En Banc* in the above-captioned matter.

3. I have been a member of Military-Veterans Advocacy, Inc. (MVA) since 2012. I currently serve as MVA's Executive Director, a role I have held since January 1, 2025, and previously served as its Chairman. I was a member of MVA at the time it filed the petition for review in this case on January 20, 2023.

4. MVA is dedicated to assisting veterans, including supporting them in navigating legal channels to secure the benefits they have rightfully earned through the VA. Through my work with MVA, I represent veterans in pursuing such benefits.

5. Access to the Veterans Benefits Management System (VBMS) and Caseflow is critical to effectively representing veterans. These systems provide real-time, accurate access to clients' files. Hard copy records or files on physical media (e.g., CD-ROMs) are inadequate substitutes, as they often arrive late, become outdated, or fail to arrive at all. I have experienced delays of weeks or even months and, in some cases, never received the requested materials. Furthermore, the CD-ROMs provided by the VA are incompatible with Windows 11, which all of my computers use. These discs only function with Windows 10, an operating system I understand to be obsolete. Consequently, these discs are effectively useless.

6. After receiving this Court's opinion dated March 6, 2025 (Doc. 68), I immediately requested attorney Will Milliken to obtain the appropriate Department of Justice request link. I received the link a week later, on March 13, 2025.

7. In June 2022, I discussed the need for access forms with Martin Carraway, who was then serving as an assistant to the Chairman of the Board of Veterans' Appeals. No action was taken following that discussion.

8. I also requested the necessary forms from Mark Bologna, the Veterans Service Center Manager at the New Orleans Regional Office. While I believe he delegated the task to someone in his office, I never received the forms.

9. Based on my experience, I do not believe the VA will provide the required forms. It is my firm belief that the VA is discriminating against MVA due to an occasionally contentious adversarial relationship.

10. As a representative of veterans, I must have timely access to case records. The lack of access to VBMS and Caseflow significantly impairs my ability to advocate effectively. Often, I have only 30 days to respond to new evidence or decisions issued by the Regional Office. Without access to the newly developed evidence, it is impossible to provide meaningful feedback

or legal argument. This raises serious due process concerns. See *Greene v. McElroy*, 360 U.S. 474 (1959).

11.    Under 38 C.F.R. § 1.602(a)(2), the VA may conduct an unrestricted background check on me merely for representing a veteran. As MVA has argued, this regulation subjects me to an arbitrary and intrusive examination of my personal and professional life. I have already undergone multiple background checks, including:

- For admission to legal practice;

- For a Top Secret security clearance during my military service;

- Most recently, by the Louisiana State Police in 2022 for a concealed carry permit.

I passed all of these screenings.

12.    In my view, the VA's background check process is unnecessary. The same records are available in hard copy or on CD-ROM—assuming the VA delivers them promptly and uncorrupted. The current electronic system offers no greater security. True protection lies in the Rules of Professional Responsibility, which hold attorneys accountable for any misuse of sensitive information.

13. If MVA's challenge to § 1.602(a)(2) is successful, I will directly benefit, as I will no longer be subjected to an unfettered and indefinite background check process.

1. The same records are available in hard copy or on CD-ROM — assuming the VA delivers them promptly and uncorrupted. The current electronic system offers no greater security.

2. VA has an affirmative duty to implement appropriate cybersecurity best practices over the information systems in its control under the Federal Information Security Modernization Act. *See* 44 U.S.C. §3506.

3. The VA's data security responsibilities are more than satisfied through the attorney licensing practices, including the character and fitness assessments and determinations, of the several states and territories. *See generally* <u>In re Office of Personnel Management Data Security Breach Litigation</u>, 928 F.3d 42 (D.C. Cir. 2019). The VA already accepts attorney licensing as satisfying the character and fitness requirements to be accredited to practice before the Agency. See 38 C.F.R. §14.629(b)(1)(ii).

4. True protection lies in the attorney's license jurisdiction's Rules of Professional Responsibility, which holds attorneys accountable for

any misuse of sensitive information. Additional protection lies in the VA General Counsel's ability to terminate accreditation for a variety of reasons. *See* 38 C.F.R. §14.633.

14.    If MVA's challenge to 38 C.F.R. §1.602(c)(1) succeeds in this case, I will directly benefit from the challenge because I will not be subject to an unfettered and indefinite background check.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. §1746.

Dated: <u>April 16, 2025</u>                    <u>*/s / John B. Wells*</u>

                                                        John B. Wells

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  23-1413

**Short Case Caption:**  Military-Veterans Advocacy v. Secretary of Veterans Affairs

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  3,552  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 04/21/2025

Signature:  /s/ William H. Milliken

Name:  William H. Milliken

Save for Filing